FITZHUGH and others, executors, &c. *vs.* RAYMOND.

By the terms of a grant, the plaintiffs' testator had "the right of conveying such quantity of water in an aqueduct under ground as shall be reasonable to be used" by him, "from any reservoir or spring of water now or hereafter found," on the lot occupied by the defendants; "provided that the quantity of water so used should not exceed the equal half part of the whole volume of water supplied by such reservoir or spring." *Held,* that the grant plainly authorized the construction of one aqueduct only, for the conveyance of water through the defendants' premises. That it gave no right to construct several, by way of experiment, to ascertain where the cheapest, or most convenient, or most reliable route could be found, or to dig up the soil for the purpose of discovering other springs.

*Held, also,* that the grantee, after constructing an aqueduct through the defendants' lands, from a reservoir thereon, and using the same for a number of

years, had not the right, when the same got out of repair, and from that cause failed to furnish a reasonable quantity of water, to go upon the defendant's lands, and construct another aqueduct, upon another route, and from another spring, nearer to the grantee's premises than the first reservoir, though such new aqueduct could be more conveniently and cheaply constructed than the old one could be rebuilt, and more easily kept in repair.

*Held, further*, that the grant was not void for uncertainty; because it could be made certain by locating and constructing the aqueduct. *Certum est quod certum reddi potest.*

THE plaintiffs' testator, Allen Ayrault, deceased, was the owner of a certain farm, in the county of Livingston, and the defendant is in occupation of another, owned by one Moss, who holds the fee thereof, subject to the right of the testator, to convey water from said farm occupied by the defendant.

The plaintiffs' testator claimed the right to enter upon the latter farm, to convey such a quantity of water in an " aqueduct under ground as should be necessary or reasonable to be used by him from any reservoir or spring found thereon." In the exercise of this alleged right, he dug a ditch from a spring found by him upon the farm, and the defendant having obstructed his proceedings, this action was brought to recover damages therefor. The plaintiffs' claim depends upon the validity and interpretation of a grant or agreement contained in the deed through which they derive title, and which, in terms, confers " the right of conveying such quantity of water in an aqueduct under ground as shall be reasonable to be used by them from any reservoir or spring of water now or hereafter found on the lots," (occupied by the defendant,) " provided that the quantity of water so to be used, shall not exceed one half part of the whole volume of water supplied by such spring or reservoir." Upon the trial, it appeared from the plaintiffs' evidence, that their testator, some sixteen or seventeen years before that time, selected a reservoir or spring upon the defendant's land, opened a ditch to it, laid an aqueduct, and conveyed the water from the spring, or reservoir, to his premises. And the existence of these facts was also assumed by both parties and the court, throughout

Fitzhugh *v.* Raymond.

the trial. It also appeared that this spring, so selected, supplied sufficient water down to a time subsequent to the commencement of the action, and, for any thing that appeared, down to the time of the trial. That in 1860, the plaintiffs' testator selected a second spring upon the defendant's land, and dug a ditch thereon preparatory to laying an aqueduct, whereupon the defendant (as the evidence tended to show) filled up the same, and hence this action. At the close of the evidence, on the part of the plaintiffs, the defendant moved for a nonsuit upon several grounds, and among others, " because the plaintiffs' testator having once selected a spring and route, and laid his aqueduct, he had no right to select another spring, and lay another aqueduct, except upon the failure of the first reservoir to furnish a reasonable quantity for his use, and this failure must be shown to be permanent, and not temporary." The motion was granted, with leave to the plaintiffs to make a case or bill of exceptions, to be heard, in the first instance, at a general term ; judgment to be suspended, in the mean time.

*Scott Lord,* for the plaintiffs.

*Geo. F. Danforth,* for the defendant.

*By the Court,* JOHNSON, J. By the terms of the grant, the plaintiffs' testator had " the right of conveying such quantity of water in an aqueduct under ground as shall be reasonable to be used " by him, " from any reservoir or spring of water now or hereafter found," on the lot occupied by the defendant ; " provided that the quantity of water so used shall not exceed the equal half part of the whole volume of water supplied by such reservoir or spring."

The question in this case is whether the testator, after constructing an aqueduct through the defendant's lands, from a reservoir thereon, and using the same for a number of years, had the right, when the first one got out of repair,

and from that cause failed to furnish a reasonable quantity of water, to go upon the defendant's lands, and construct another aqueduct, upon another route, and from another spring, nearer to the testator's premises than the first reservoir, and which last aqueduct could be more conveniently and cheaply constructed than the reconstruction of the old one, and more easily kept in repair. The plaintiffs' evidence tended to show that the new route was the shortest and on a better grade than the old one, rendering the pipes conveying the water less liable to fill up and otherwise get out of repair. And this question, if material, should have been submitted to the jury. But in my view of this case this was wholly immaterial. The grant plainly authorizes the construction of one aqueduct, only, for the conveyance of water through the defendant's premises. It gave no right to construct several, by way of experiment, to ascertain where the cheapest or most convenient, or most reliable route could be found. Such a construction of the grant, or license, would impose a most intolerable servitude and burthen upon the defendant's premises, and one which the parties making it obviously never contemplated. It was never intended to subject them to the changing schemes or mere caprices of another.

When the testator had constructed one aqueduct through the lands occupied by the defendant, which, under the limitations prescribed, was capable of supplying such a quantity of water as was reasonable for him to use, continuously, by suitable and proper care and attention and necessary repairs, he had obtained just what the grant gave him, and the same was completely fulfilled and satisfied, by a location of what was granted, and by seisin in fact. After this he could have no right to go on and construct other aqueducts by way of experiment, or dig up the soil for the purpose of discovering other springs, which he might regard for the time being as more suitable, or practicable, or advantageous to his interest. Any other construction might subject the owner of the premises in question to constant annoyance and injury, if

Fitzhugh *v.* Raymond.

not wholly deprive him of the use and quiet enjoyment thereof.

The grant is not void for uncertainty ; because it could be made certain by locating and constructing the aqueduct. The legal maxim is, that that is certain which may be made certain. The right granted was to carry such quantity of water, in *an aqueduct* under ground, as should be reasonable to be used, from any reservoir now or hereafter to be found on the premises. When the aqueduct was located, therefore, and constructed from any reservoir or spring, on the premises, there was no longer any uncertainty, but the right became ascertained, and fixed with as much precision and certainty as could have been arrived at by a survey and metes and bounds. But the grantee is evidently restricted to a single aqueduct. " *Such aqueducts* shall be built only at such a period of the year, when it can be done without injury to the crops of grain or grass growing on the land." This clearly contemplates a single subterranean structure, and no more. It is not a shifting right in respect to locality, after the grant has once been satisfied. Had it turned out, after the first aqueduct was completed, that the spring, or fountain selected, would not furnish the reasonable quantity of water to which the testator was entitled by the terms and spirit of the grant, or that by reason of the unfavorable grade the water would not flow through it by any degree of care and attention, it may be that he would have had the right of changing the route, or electing another spring or fountain, to draw from. I have no doubt he would have such right, in that case. The main purpose of the grant was to enable the grantee to supply himself with water, under the limitations prescribed, from the lands of the grantor, if reasonably necessary. Indeed, this court so held, substantially, when this cause was before it on a former occasion. But this is no such case. Here, most clearly, was no failure of supply at the fountain first selected, except such as was caused wholly by the neglect of the testator in not keeping the fountain in repair. It washed

down so that the water did not come up to the mouth of the pipes or logs, and in that way failed for a time. But it is not shown that it could not be readily repaired and the water raised in it to the requisite height. And it has been in fact repaired since this action was commenced, as the evidence plainly shows. Another cause of temporary failure was the bursting of the pump logs, which were originally defective or which had decayed. The water did run through the pipes or logs without any difficulty when they were in proper order, as all the evidence clearly shows. There was at no time any insurmountable difficulty in obtaining water through this first aqueduct, or any difficulty, which might not have been overcome by the exercise of reasonable skill in construction, and of care and diligence in the maintenance of the work. It was, in fact, never abandoned by the testator, as his repair and use, subsequent to the commencement of this litigation proves. The whole case shows beyond all dispute that the attempt to dig a new ditch for another aqueduct, was a mere experiment to ascertain whether a new route, with the head at another spring or reservoir, could not be found which would be more convenient for the testator, and less expensive to keep in repair. This was an experiment which, under the circumstances, he had no right to make, and the defendant was perfectly justifiable in filling up the excavation, and putting an end to these roving trials for the discovery of new fountains and more convenient routes.

There was no disputed question of fact to be submitted to the jury. It was a mere question of law, upon the plaintiffs' evidence. The nonsuit was therefore properly granted. I have been unable to discover any error in the rulings upon the trial, against the plaintiffs. A new trial must therefore be denied.

[Monroe General Term, September 2, 1867. *J. C. Smith, E. Darwin Smith* and *Johnson,* Justices.]